```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION


James Bean,                      :

       Plaintiff,                :

     v.                          :   Case No.  2:14-cv-237

                                 :   JUDGE GREGORY L. FROST
Commissioner of Social Security,     Magistrate Judge Kemp

       Defendant.                :
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, James Bean, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  The former application was filed on July 18, 2010, while the latter was filed on November 7, 2011.  Both applications alleged that Plaintiff became disabled on June 7, 2010.

After initial administrative denials of his claim, Plaintiff was given a hearing before an Administrative Law Judge on April 23, 2012.  In a decision dated May 22, 2012, the ALJ denied benefits.  That became the Commissioner's final decision on August 10, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on May 23, 2014.  Plaintiff filed his statement of specific errors on June 25, 2014, to which the Commissioner responded on September 22, 2014.  No reply has been filed, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 45 years old at the time of the

administrative hearing and who has a high school education along with two years of college, testified as follows. His testimony appears at pages 33-64 of the administrative record.

Plaintiff has a trade school certificate in computer programming. His last job involved repairing computer monitors. He performed that job while sitting but did have to lift up to 50 pounds. Before that, he worked as a laptop repair person, a sedentary job, and as a technician testing electronic components. That job required constant standing. Plaintiff had also been a maintenance man at a McDonald's, which was a part-time position, and had been a silkscreen technician. Finally, he worked as a forklift loader and customer service representative at a nursery.

As far as medical issues, Plaintiff testified that he was in a car accident in 2010 and it aggravated his bipolar disorder. He began to have anxiety and panic attacks and the accident affected his memory. Since the accident, he had been able to drive only short distances due to panic attacks, a condition helped somewhat by medication. These attacks had been occurring on an almost daily basis, but the medication had reduced them to once a week. The trigger appeared to be crowds of people. Plaintiff needed to lie down for at least an hour after such an episode. Plaintiff's bipolar disorder also caused symptoms. He experienced racing thoughts and was easily distracted.

From a physical standpoint, Plaintiff said that he had increased pain in his left knee after the accident along with some instability. He also had pain due to hepatitis and that condition caused urgent needs to use the bathroom. At the time of the hearing, he had not started treatment for his hepatitis. Additionally, he experienced daily fatigue due to thyroid problems. He did tell a doctor that traveling to work was problematic, but once he got there he was fine.

### III. The Medical Records

The medical records in this case are found beginning on page 238 of the administrative record. The pertinent records - those which relate to the claims raised by Plaintiff in the Statement of Errors - can be summarized as follows.

Plaintiff underwent a CT scan of his abdomen and pelvis four days after his automobile accident. He was reporting abdominal pain, but the scan showed nothing which would account for that symptom. (Tr. 266-67). X-rays showed no fractures or dislocations. The doctor who ordered those studies, Dr. Tuttle, his primary care physician, was also treating Plaintiff for his bipolar disorder which, to that point, was well-controlled with medication. He did see Dr. Brandemihl, a psychiatrist, as early as 2009, and initially Dr. Brandemihl rated Plaintiff's GAF at 60. (Tr. 290). In 2011, however, Dr. Brandemihl completed an impairment questionnaire indicating that Plaintiff's bipolar disorder was a "severe, chronic, disabling condition" and that he had a panic disorder as well. His current GAF was 50 and had been as low as 40 in the past year, and his prognosis was guarded. The most severe symptoms were mood swings and panic attacks. Dr. Brandemihl indicated that Plaintiff had marked limitations in his ability to maintain attention and concentration for extended periods, to complete a workday or work week without interruptions from psychologically-based symptoms, and to maintain socially appropriate behavior. He noted that stress could trigger panic attacks or psychosis, that Plaintiff could not tolerate any work stress, and that he would miss work more than three times per month due to his symptoms. (Tr. 310-17). Later, Dr. Brandemihl completed a form stating that Plaintiff met the requirements for disability under Listing Section 12.04. (Tr. 356-57).

When Plaintiff saw Dr. Tuttle on July 9, 2011, Plaintiff made the comment referred to in his testimony about being fine

once he got to work.  He said he did not feel safe enough to drive.  At that point, his panic attacks had decreased to once per week.  (Tr. 350).  He had previously reported that his primary medication for panic attacks was "doing well" and he had little need of his secondary medication.  (Tr. 352).

Dr. Mabee, who had been treating Plaintiff for Hepatitis C, reported on March 27, 2012, that Plaintiff had significant functional limitations including no lifting more than 20 pounds and occasionally lifting and carrying only 5-10 pounds and a need for ready access to a restroom. Further, due to his bipolar disorder, Plaintiff experienced an impairment of his memory and an inability to concentrate.  Dr. Mabee also thought Plaintiff would miss at least three days of work per month.  (Tr. 377).

Plaintiff's application was also reviewed initially by state agency reviewers.  Drs. McCloud and Swain concluded that Plaintiff had no severe impairments. (Tr. 92-97).  Drs. Villanueva and Umana affirmed those assessments.  (Tr. 99-105).

#### IV.  The Vocational Testimony

Dr. Jerry Olshevski was the vocational expert in this case. His testimony begins on page 64 of the administrative record.

Dr. Olshevski testified that Plaintiff's prior work repairing computers and testing electronic components was skilled and ranged from sedentary to medium.  Both the maintenance job and the silkscreening job were semi-skilled; the former was medium and the latter was light.

Dr. Olshevski was then asked some questions about a hypothetical person who had Plaintiff's educational and work history.  That person could work at any exertional level and could understand and remember simple and some complex instructions and could sustain attention to complete repetitive tasks where production quotas were not critical.  The person could also tolerate coworkers and supervisors with limited

interpersonal demands in an object-focused non-public work setting and could adapt to routine changes in a static work setting with no exposure to commercial driving, unprotected heights, or moving machinery. He testified that someone with those limitations could do Plaintiff's past job as a silkscreen technician. The person could also perform jobs like cleaner, hand packer, or packing and filling machine operator.

Dr. Olshevski was then asked about a hypothetical person who was limited to work at the light exertional level, had all of the limitations previously described, and also needed to be in a work setting that provided ready access to a restroom. He said that these additional limitations were consistent with the jobs he had identified. However, someone who would miss work three or more days per month could not be employed; the same would be true for someone off task more than 20% of the time or who needed to take five to seven unscheduled breaks during the day in addition to regularly-scheduled breaks.

V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 110-20 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Second, Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 7, 2010. Next, he found that Plaintiff suffered from severe impairments including a bipolar affective disorder, an anxiety disorder, and a panic disorder. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation

process, the ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels and that he could understand and remember simple and some complex instructions and could sustain attention to complete repetitive tasks where production quotas were not critical.  Plaintiff could also tolerate coworkers and supervisors with limited interpersonal demands in an object-focused non-public work setting and could adapt to routine changes in a static work setting with no exposure to commercial driving, unprotected heights, or moving machinery.  The ALJ found that, with these restrictions, Plaintiff could perform his past relevant work as a silkscreen technician and that he could also do those jobs identified by Dr. Olshevksi.  Finally, the ALJ determined that those jobs existed in significant numbers in the regional economy and in the national economy.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred by finding that Plaintiff's impairments did not meet or equal the criteria found in Section 12.04 of the Listing of Impairments; and (2) the ALJ did not properly weigh the opinion of the treating sources, Drs. Brandemihl and Mabee; and (3) the ALJ did not make a proper credibility determination. The Court analyzes these claims under the following standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere

scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Section 12.04

Plaintiff argues, first, that his impairments meet the requirements for disability set forth in Section 12.04 of the Listing of Impairments. He bases this argument on the fact that Dr. Brandemihl expressly stated that Plaintiff met the various criteria for disability under that section, but the ALJ's discussion of the Listings makes no mention of Dr. Brandemihl's opinion. Consequently, he concludes that the ALJ's discussion of this issue was "insufficient." Statement of Errors, Doc. 8, at 10. The Commissioner counters that the ALJ properly weighed Dr. Brandemihl's opinion when, at step four of the sequential evaluation process, he determined Plaintiff's mental residual functional capacity. The Court agrees that these issues are intertwined, and will therefore proceed to Plaintiff's second argument, which is that the ALJ did not properly follow the "treating physician" rule when evaluating the opinions of Drs.

Brandemihl and Mabee.

### B. The Treating Physician Evaluation

Plaintiff's second argument is that the ALJ did not properly weigh the opinions of the treating sources or explain his reasons for rejecting them. It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The Court typically begins its review of this claim of error by highlighting the ALJ's rationale for rejecting the treating source opinions. Here is what the ALJ had to say on the subject:

> Great weight is given to the State Agency medical consultants' assessments at Exhibit 1A and 3A [the opinions of Drs. McCloud, Swain, Villanueva, and Umama]

> as these opinions are based on objective medical evidence of record, are consistent with the totality of the medical evidence of record, are consistent with the credible portions of the claimant's activities of daily living, and are completed by sources shown to be familiar with SSA and occupational standards.
>
> Less weight is given to Exhibit 9F/10F, 14F, and 16F [the treating source opinions] as these opinions are not fully supported by the objective medical evidence of record, are highly dependent upon the claimant's reports of symptoms and limitations where the claimant is found to be not wholly reliable as a reporter of symptoms and limitations, are not by a source shown to be familiar with SSA and occupational standards, and are not consistent with the credible portion of the claimant's activities of daily living.

(Tr. 116).  Plaintiff argues that this reasoning is defective because (1) the ALJ never explains how he gave "great weight" to opinions that Plaintiff had no severe impairments but then went on to make a contrary finding; (2) the ALJ improperly rejected the treating source opinions simply because they were inconsistent with the non-examining reviewers' opinions, something that the law does not permit; (3) the state agency reviewers did not have the complete record before them; (4) the medical records actually support the treating source opinions; (5) the ALJ did not explain what portion of Plaintiff's activities of daily living were inconsistent with his doctors' opinions; and (6) the ALJ did not weigh the treating source opinions using the factors set forth in 20 C.F.R. §404.1527(c), including the length of the treating relationship, the focus of their opinions on his disabling impairments, the presence of clinical and objective findings to support their opinions, the consistency of those findings with the remainder of the medical record, and the fact that each is a specialist in the field.

    The Commissioner defends what is, on its face, a terse and conclusory rejection of the treating source opinions by arguing

that, as to Plaintiff's physical impairments, there was no evidence to support Dr. Mabee's view that Plaintiff was limited by his Hepatitis C, and significant evidence to support the contrary view; and, as to his mental impairments, that Dr. Brandemihl's opinion was based on Plaintiff's own report of symptoms and not on objective evidence, and that treatment notes (primarily from Dr. Tuttle) showed an improvement in his condition with medication.  The Commissioner asserts that the ALJ actually gave Plaintiff the benefit of the doubt by crediting Dr. Brandemihl's views to some extent, and that the record shows that Plaintiff was no more limited than the ALJ found him to be.

     With one exception - the limitation that Plaintiff would miss three or more days of work due to physical symptoms - any differences between Dr. Mabee's findings and the ALJ's physical residual functional capacity determination are insignificant, because the vocational expert testified that someone limited to work at the light exertional level who needed ready access to a restroom could perform a number of different jobs.  It is not clear that Dr. Mabee attributed the need to miss work to physical symptoms, since he also included psychological symptoms in his report.  However, the Court agrees with the Commissioner that there was no evidence supporting a need to miss three days of work per month due to physical impairments.  Consequently, the key issue is the extent to which the Commissioner was permitted to discount the evidence that, from a psychological standpoint, Plaintiff had limitations inconsistent with the performance of necessary work-related activities.

     The ALJ gave several reasons for not giving much weight to Dr. Brandemihl's opinions, some of which are clearly insufficient.  The fact that Dr. Brandemihl was not shown to be familiar with SSA and occupational standards is not pertinent to his ability to assess Plaintiff's psychologically-based limitations.  Additionally, the ALJ's vague reference to the

opinion as being "not fully supported by the objective medical evidence of record," Tr. 116, without any identification of the supposedly inconsistent evidence, is not the kind of articulation necessary to satisfy §404.1527(c) as interpreted in Wilson. See, e.g., Dexter v. Comm'r of Social Security, 2014 WL 4467666, *5 (S.D. Ohio Sept.9, 2014) (a generalized reference to the 'medical record of evidence,' without any explanation of what portions of that record are being relied on, [is] simply insufficient"). Further, when dealing with psychological symptoms, some amount of reliance on the claimant's own report is necessary and customary. See Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) ("'The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.'"), quoting Poulin v. Bowen, 817 F.2d 865, 873-74 (D.C. Cir. 1987).  That leaves, as a reason which is specific enough to be reviewed, the ALJ's assertion that the treating source opinions (and he did not differentiate between the two) were "not consistent with the credible portion of the claimant's activities of daily living."

According to the ALJ, the credible portion of Plaintiff's description of his activities of daily living was that his panic attacks and his ability to concentrate had improved with medication to the point that they would not interfere more than moderately with his ability to perform various work-related functions.  In that section of his decision addressing the Listing of Impairments, the ALJ found that Plaintiff had no more than mild restrictions on his activities of daily living because he testified to performing a fairly full range of such activities; mild difficulties in social functioning based on the fact that he could go to medical appointments and counseling; and no more than moderate difficulties in concentration, persistence,

and pace due to improvements made by his medications and based on his testimony (although the specifics of that testimony are not mentioned). See Tr. 114.

Plaintiff attacks the ALJ's credibility finding, asserting that modest response to treatment does not equate to the ability to work a full workday or work week, that Plaintiff did not testify to being able to do so, and that the ALJ improperly used some doubts about Plaintiff's report of his work activity and his prior felony convictions to discount his credibility. The Commissioner responds that the ALJ did not rely improperly on Plaintiff's felony record as a reason to discount his testimony and that he otherwise properly considered inconsistencies in the evidence as a reason for finding Plaintiff not entirely credible.

A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking. Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors. 20 C.F.R. §404.1529(c)(3). Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

The ALJ did appear to give undue emphasis to Plaintiff's criminal history as reason to find him less than believable. Although he mentions the fact that Plaintiff lost his job in 2009 due to his employer's consideration of Plaintiff's criminal history, the ALJ also clearly took that history into account in concluding that Plaintiff might not have been motivated to work,

and thus motivated to exaggerate his symptoms.  The ALJ also appeared to overstate the extent to which Plaintiff's activities of daily living were consistent with working, and to place undue emphasis on the fact that some of his symptoms were amenable to treatment.  His treating psychiatrist was aware of Plaintiff's response to medication, yet found that he still experienced symptoms that were incompatible with sustained work activity.  The ALJ's rationale is therefore largely unsupported by the record.

Reduced to its essence, the ALJ's decision to afford only little weight to, in particular, Dr. Brandemihl's opinion is based on a number of either questionable or inadequately-articulated factors, plus a credibility finding that is only weakly supported.  There may be more support in the record for the rejection of Dr. Brandemihl's opinions (and the Commissioner's memorandum details some of that support), but that rationale is absent from the ALJ's discussion of the treating source opinions and the Court may not consider it.  See, e.g., Smart v. Comm'r of Social Security, 2012 WL 6101053, *8 (S.D. Ohio Dec. 7, 2012) (rejecting "attempts to remedy the ALJ's decision by engaging in post hoc rationalization for the ALJ's omissions").  Consequently, this case must be remanded for a more thorough consideration of the treating source opinions and a more complete explanation of how and why the ALJ weighed them based on the appropriate regulatory factors set forth in §404.1527(c).

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(b), sentence four.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this

Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

     The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                                      /s/ Terence P. Kemp
                                                      United States Magistrate Judge